UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 19, 2015

LETTER TO COUNSEL

    RE:   *Christopher Robert Elliott v. Commissioner, Social Security Administration*;
            Civil No. SAG-14-2557

Dear Counsel:

On August 12, 2014, Plaintiff Christopher Robert Elliott petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Elliott's reply. (ECF Nos. 23, 24, 27). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment. This letter explains my rationale.

Mr. Elliott filed his claim for benefits on October 7, 2011, originally alleging a disability onset date of August 15, 2007.[1] (Tr. 167-74). His claim was denied initially and on reconsideration. (Tr. 102-05, 107-10). A hearing was held on October 28, 2013 before an Administrative Law Judge ("ALJ"). (Tr. 38-70). Following the hearing, the ALJ determined that Mr. Elliott was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 16-37). The Appeals Council ("AC") denied Mr. Elliott's request for review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Elliott suffered from the severe impairments of "degenerative disc disease of the lumbar spine, status post right L5-S1 diskectomy with decompression in November 2008, bipolar disorder and attention-deficit hyperactivity disorder (ADHD), predominantly inattentive type." (Tr. 21). Despite these impairments, the ALJ determined that Mr. Elliott retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to occasionally [sic] climbing of ramps, stairs, ladders, ropes and scaffolds, occasionally balancing, stooping, kneeling, crouching and crawling. The claimant is limited to routine, repetitive simple tasks with only occasional interaction with co-workers, public and supervisors and. [sic] The claimant is

---

[1] On October 28, 2013, Mr. Elliott voluntarily amended his alleged onset date to August 8, 2011. (Tr. 211).

*Christopher Robert Elliott v. Commissioner, Social Security Administration*
Civil No. SAG-14-2557
August 19, 2015
Page 2

> limited to positions where there would be little to no change in the work setting from day to day.

(Tr. 24). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Elliott could perform jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 31-32).

Mr. Elliott raises three primary arguments on appeal: (1) that the ALJ did not adequately consider Mr. Elliott's limitation in his ability to accept directions and feedback; (2) that the ALJ did not consider the opinions of Mr. Elliott's treating physician, Dr. Sitaras; and (3) that the ALJ erroneously evaluated Mr. Elliott's credibility. Additionally, as addressed below, I have considered Mr. Elliott's case under the dictates of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), a Social Security appeal from the Eastern District of North Carolina. For the reasons addressed below, I find that each argument lacks merit, and that any *Mascio* violation constitutes harmless error.

First, Mr. Elliott suggests that the ALJ did not acknowledge the finding by the State agency medical consultants that Mr. Elliott "can accept directions and feedback in general with moderate difficulties." Pl. Mot. 9-10. However, the express restrictions in the RFC assessment account for that finding. The ALJ limited Mr. Elliott to "routine, repetitive, simple tasks," which inherently limit the amount of directions required to be given, and to "only occasional interaction with . . .supervisors," which constrains the amount of feedback Mr. Elliott would receive. Accordingly, no further restrictions were needed to address the apparent limitation.

Second, Mr. Elliott contends that the ALJ failed to address opinions rendered by his treating physician, Dr. Sitaras, regarding his ability to work. Pl. Mot. 11. Any error in failing to address those opinions, which essentially consist of remarks made within treatment notes, is harmless. The dates of Dr. Sitaras's opinions range from June, 2009 through November, 2010, which well pre-date the amended onset date of August 8, 2011. *See,* (Tr. 393, 397, 400, 403, 405, and 410). Moreover, within those treatment notes, Dr. Sitaras acknowledges the possibility that Mr. Elliott's condition will allow him to work in the future. *See, e.g.,* (Tr. 393) (noting that Dr. Sitaras cannot clear Mr. Elliott to work until he receives a note from his psychiatrist); (Tr. 410) (noting that computer training will be "ideal" to pursue future employment). Accordingly, nothing in Dr. Sitaras's earlier treatment notes would reasonably affect the ALJ's conclusion that Mr. Elliott was capable of working after August 8, 2011.

Mr. Elliott's final argument is that the ALJ erred in assessing his credibility. Pl. Mot. 11-12. Specifically, Mr. Elliott objects to the ALJ's contention that performance of activities of daily living (ADLs) supports an ability to engage in work on a sustained basis. However, Social Security regulations expressly provide that ADLs are relevant considerations in determining a claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3). In addition, the ALJ did not rest his conclusion solely on Mr. Elliott's ADLs, but also cited extensively to the medical evidence of record, including objective testing and clinical findings, and the nature of the treatment rendered.

Case 1:14-cv-02557-SAG   Document 28   Filed 08/19/15   Page 3 of 5

*Christopher Robert Elliott v. Commissioner, Social Security Administration*
Civil No. SAG-14-2557
August 19, 2015
Page 3

(Tr. 26-28). Accordingly, consideration of the ADLs as one of many factors was entirely appropriate and does not warrant remand.

Finally, while this case was pending, the Fourth Circuit issued an opinion in *Mascio v. Colvin*, a Social Security Appeal from the Eastern District of North Carolina. In *Mascio*, the Fourth Circuit determined remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d 632, 638 (4th Cir. 2015). Although a similar discrepancy appears to exist in this case, it is critically distinguishable in several respects, and *Mascio* does not require remand.

To understand why this case is distinguishable from *Mascio*, some background is necessary. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.02 through 12.10, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02-12.10. Each listing therein consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. Id. § 12.00(A).[2] If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific

---

[2] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

Case 1:14-cv-02557-SAG   Document 28   Filed 08/19/15   Page 4 of 5

*Christopher Robert Elliott v. Commissioner, Social Security Administration*
Civil No. SAG-14-2557
August 19, 2015
Page 4

number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (*citation and internal quotation marks omitted*). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant had moderate difficulties . . . He can follow spoken instructions 'not well,' depending on the complexity of the task, and how the speaker presents or describes the task." (Tr. 23). The ALJ concluded that "the claimant warrants *no more than* moderate limitations in concentration, persistence and pace." *Id.* (*emphasis added*). In the RFC analysis, the ALJ provided extensive explanation of his assessment of Mr. Elliott's concentration. The ALJ noted that Mr. Elliott "alleged that his concentration is a little better but he still has problems with his concentration." (Tr. 26). He reviewed Dr. Ahn's notes suggesting that medication improved Mr. Elliott's attention deficit symptoms. (Tr. 28). Most importantly, the ALJ noted:

> Moreover, Exhibits 16F and 17F indicate that the claimant was performing as a stage actor in community plays, having small parts. Assuming that the undersigned accepts the claimant's testimony minimizing his acting role, his testimony that he was only doing lights and sounds still shows that he is capable of performing unskilled work as noted in the residual functional capacity herein. To have successfully done the job, he needed to have good concentration and attention to change the lights on cue and change the sound levels as needed.

(Tr. 28). The explanations offered both at step three and in the RFC assessment render this case distinguishable from *Mascio* because they clarify the reasons why the ALJ did not include restrictions other than a limitation to "routine, repetitive, simple tasks."

For the reasons set forth herein, Mr. Elliott's Motion for Summary Judgment (ECF No. 23) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 24) is GRANTED. The Commissioner's judgment is affirmed pursuant to sentence four of 42 U.S.C. § 405(g). The clerk is directed to CLOSE this case.

Case 1:14-cv-02557-SAG   Document 28   Filed 08/19/15   Page 5 of 5

*Christopher Robert Elliott v. Commissioner, Social Security Administration*
Civil No. SAG-14-2557
August 19, 2015
Page 5

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

        Sincerely yours,

        /s/

        Stephanie A. Gallagher
        United States Magistrate Judge